MYRNA LABOW *v.* RONALD LABOW
(4511)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued October 7, 1987—decision released February 2, 1988

*Stuart M. Roth,* with whom were *Leonard Berringer* and, on the brief, *Edith S. Rosen* and *Cindy S. Schwartz,* for the appellant (defendant).

*Myrna LaBow,* pro se, the appellee (plaintiff).

DUPONT, C. J. The defendant appeals from the modification of the original monetary awards granted to the plaintiff in 1978 upon the dissolution of a twenty-eight year marriage. The original judgment had awarded custody of the parties' three minor children to the plaintiff, and had ordered the defendant to pay the following amounts: $4500 per month unallocated alimony and child support; $566.85 per week for expenses relating to certain real estate properties; $220 per week for utilities; up to $10,000 per year for medical and dental expenses for the plaintiff and the minor children; up to $30,000 per year for educational expenses for the minor children; and life insurance premiums for existing policies insuring the defendant's life which name the plaintiff as beneficiary.

In 1982, the defendant filed a motion for modification, alleging a substantial downward change in his financial circumstances. The plaintiff subsequently filed a motion seeking an upward modification of the original award. After extensive hearings, a state trial referee, acting as the trial court, rendered judgment for the plaintiff. The court's orders included the following: $4500 per week alimony; $200 per week child support;[1] $95,655 plus interest in reimbursement for property taxes previously paid by the plaintiff; up to $10,000 per year for all medical and dental expenses of the plaintiff; and the cost of leasing, garaging and operating an automobile.

The defendant claims that the trial court abused its discretion in ruling on the motion for modification (1) by acting in a biased manner toward the plaintiff which deprived the defendant of his right to a fair hearing, and (2) in its monetary awards.

I

The first issue is whether the court erred in not granting the defendant's motion for recusal. The defendant's accusations are four fold. First, the defendant claims that the trial court assisted the plaintiff in introducing exhibits into evidence, made objections on her behalf, questioned her witnesses, and gave instructions as to how she should proceed in the case. The defendant argues that such conduct is adversarial in nature

---

[1] Since the date of dissolution, one child has reached the age of majority. The defendant sought an allocation of the unallocated alimony and support order. The trial court determined that no evidence had been offered to determine how much of the unallocated order originally entered was allocated for child support. The court found, however, that according to the notes accompanying the judgment file which are part of the court file, that only $100 per week for each of the then three minor children was included as part of the unallocated alimony and support order. On the motion for modification the court ordered that the defendant pay to the plaintiff the sum of $200 per week for the support of each minor child. The defendant does not raise any error on appeal as to this order of support.

and constitutes acting as counsel for the plaintiff. Second, the defendant asserts that the court showed favoritism toward the plaintiff in ruling on discovery matters, and also made several statements which evidenced distrust of the defendant. Third, the defendant asserts that the trial court treated the litigants disparately for the same or similar conduct in its issuing of penalties for violations of its discovery orders. Finally, the defendant argues that the trial court's "outrageous awards entered in its Memorandum of Decision" illustrate the "court's final act of favoritism" toward the plaintiff.

These charges by the defendant accuse the trial judge of bias or prejudice and, as such, are accusations which "[strike] at the very core of judicial integrity and [tend] to undermine public confidence in the established judiciary . . . ." *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 (1953). Such accusations "[implicate our] basic concepts of [a] fair trial." *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). They necessitate a thorough review of all portions of the transcript which the defendant believes support his claim that he was denied the right to a fair trial by an impartial judge. *Szypula* v. *Szypula,* 2 Conn. App. 650, 653, 482 A.2d 85 (1984).

Canon 3 (C) (1) of the Code of Judicial Conduct requires a judge to disqualify himself or herself in any judicial proceeding in which his or her impartiality might reasonably be questioned. This canon has been explicated in a number of Connecticut decisions. It is axiomatic that a trial judge must conduct all trial proceedings with the "highest degree of impartiality"; *Felix* v. *Hall-Brooke Sanitarium,* supra; *Postemski* v. *Landon,* 9 Conn. App. 320, 322, 518 A.2d 674 (1986); and that, as a minister of justice, a trial judge ought

to be "cautious and circumspect in his language and conduct." *Felix* v. *Hall-Brooke Sanitarium*, supra, 502. The trial judge "should be careful to refrain from any statement or attitude which would tend to deny the defendant a fair trial." *State* v. *Gionfriddo*, 154 Conn. 90, 97, 221 A.2d 851 (1966).

Disqualification of a trial judge is not dependent upon proof of actual bias. See *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 441 A.2d 49 (1981). The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality. *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 745–46, 444 A.2d 196 (1982); *Keppel* v. *BaRoss Builders, Inc.*, 7 Conn. App. 435, 440–41, 509 A.2d 51 (1986).

It is the defendant's claim that the court acted as counsel for the plaintiff. This claim must be examined in its proper perspective based upon certain facts. The defendant is a nonpracticing lawyer and a shrewd businessman who was represented by competent counsel. The plaintiff is a pro se litigant who claimed at trial that she could not afford legal representation because of the defendant's intentional withholding of more than $300,000 in back alimony and support payments. The record supports the fact that the plaintiff was unable to collect the sums awarded her by the Connecticut court which rendered the original judgment until after her extensive pro se litigation efforts in the New York courts.

Although the trial court is permitted to take those steps which are necessary to ensure the orderly progress of a trial; *Cameron* v. *Cameron*, supra, 169; a trial court may not make remarks or exhibit any conduct which is indicative of favor. Therefore, a trial judge

must not exhibit an apparent position of advocacy in the case before him or her. *State* v. *Bember,* 183 Conn. 394, 402, 439 A.2d 387 (1981).

The transcript indicates that on several occasions the trial court asked the defendant a question while he was being cross-examined by the plaintiff. " 'Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion. The judge must not exhibit bias or prejudice nor take sides.' " Id., 401–402, quoting *State* v. *Cianflone,* 98 Conn. 454, 469, 120 A. 347 (1923). The questions asked by the court in this case indicate that it rephrased questions that were put to the defendant by the plaintiff, but that the rephrasing occurred only after the defendant stated: "I am not sure I understand the question."[2]

---

[2] The questioning which the defendant challenges consisted of the following:

"By Mrs. LaBow:

"Q. Mr. LaBow, there is a Charon Styx Associates as well as a Charon Styx Management Corporation, is that correct, two different things?

"A. [Mr. LaBow] What is that? Is that question in the present tense or the past tense?

"The Court: Now or 1967?

"Mrs. LaBow: I am sorry. I think it was—wait a minute. I'm sorry. I am sorry.

"Q. What year did Charon Styx Associates begin? Let me ask first about Charon Styx Associates? What year did you start—no—did you start Charon Styx Associates? Did you form it, Mr. LaBow? Did you start a Charon Styx Associates?

"A. I am not sure I understand the question. By starting, by incorporating it, did I sign a limited partnership agreement?

"A. Did you start it? Were you the party who started it, put it together?

"The Court: Were you part of Charon Styx Management Company at any time?

"The Witness: I was not a partner in Charon Styx Management. I believe I was an officer.

"The Court: What kind of officer?

The transcript also indicates several occasions when the court assisted the plaintiff in introducing exhibits into evidence, in making objections, and in giving instructions on how to proceed in the case. Such conduct, however, was not adversarial but, rather, was an attempt by the trial court to conduct a fair and impartial proceeding. Our review of the transcript indicates that the trial court was mindful of the pro se plaintiff's earnest but sometimes ineffective efforts to present her case. See *Connecticut Light & Power Co.* v. *Kluczinsky,* 171 Conn. 516, 519–20, 370 A.2d 1306 (1976). In Connecticut, the trial courts as well as the appellate courts have been solicitous of the rights of pro se litigants. See *Keane* v. *Smith,* 163 Conn. 606, 316 A.2d 416 (1972), cert. denied, 409 U.S. 1113, 93 S. Ct. 927, 34 L. Ed. 2d 696 (1973); *Bitonti* v. *Tucker,* 162 Conn. 626, 295 A.2d 545, cert. denied, 409 U.S. 851, 93 S. Ct. 62, 34 L. Ed. 2d 94 (1972). "In such a situation not only this court, but our [trial courts], so far as they properly can, will endeavor to see that such a plaintiff shall have the opportunity to have [her] case fully and fairly heard, and will endeavor to aid a result, such as this case presents, brought about by [the] plaintiff's lack of legal education and experience, rather than to deny [her] an opportunity to be heard through a too strict construction of a rule of practice, when this course does not interfere with the just rights of the [other party], nor unduly impede the court in making a proper record for appeal." *Higgins* v. *Hartford County Bar Assn.,* 109 Conn. 690, 692, 145 A. 20 (1929).

"The Witness: A vice president. I may have been a vice president.

"The Court: What was the purpose of Charon Styx Management?

"The Witness: I believe it was an entity formed to pay the expenses, accounting, legal, what have you, of Charon Styx Associates, but I am not sure of that. That is the best recollection I have right now. . . ."

Counsel for the defendant did not object to the trial court's questioning of the defendant.

We conclude that the trial court's conduct was appropriate under the circumstances and that the court did not act as counsel on behalf of the plaintiff.

The defendant also claims that the trial court showed favoritism toward the plaintiff. The defendant avers that such "favoritism" is evidenced, in part, by the trial court's leniency with the plaintiff on discovery and evidentiary matters. We note, however, that the defendant has failed to claim any error on appeal regarding discovery or evidentiary issues.

The defendant's other proffered evidence of "favoritism" is that the trial court "made several statements which evidenced his distrust of the defendant." The defendant draws our attention to designated pages of the transcript which contain certain statements in which the trial court made a remark about the defendant or his attorney. In the context in which they were made, however, they do not show bias.

In the first statement, the trial court said to the defendant's attorney: "I seem to see an awful lot of dilatory action on the part of your client . . . . " This statement was made after the defendant failed to comply with the trial court's repeated orders for certain authorizations to obtain documents.

The second statement made by the trial court concerned the defendant's attorney. The court said: "I'm beginning to question very much your sincerity . . . . " This statement was made after a short controversy between the trial court and the defendant's attorney over a discovery order.[3] The situation here

---

[3] The transcript shows the following discourse between the court and the defendant's attorney:

"The Court: You produce the records from Neuberger and Berman of all compensation paid by them in any form or in any manner or from any

is remarkably similar to the situation presented in
*Keppel* v. *BaRoss Builders, Inc.,* supra, 439–40, where
this court held that the trial court's statement that the
defendant was "playing fast and loose with . . . the
court," did not constitute prejudice, even though the
statement was made on three occasions. In *Keppel,* we
stated that the statement "showed that a judge is a
human being, not the type of unfeeling robot some
would expect the judge to be. Such a passing display
of exasperation . . . falls far short of a reason-
able cause for disqualification for bias or prejudice
under Canon 3 (C) of the Code of Judicial Conduct."
Id., 444.

Similarly, although the first two statements show
some agitation, impatience and frustration with the
defendant and his attorney, they do not "indicate [an]
opinion as to the untruthfulness of [the defendant], nor
any prejudice or predisposition in the consideration of
the evidence." Id.

The third statement made by the court also falls short
of a showing of prejudice or bias which is necessary
for disqualification. The circumstances surrounding the
making of the statement show that the trial judge was
attempting to clarify a discovery order about which

source and I want Neuberger and Berman to certify, under oath, that the
records they are supplying are accurate and complete.

"Mr. Roth: You can't direct that order against me, Your Honor. You're
asking Neuberger and Berman to certify. I don't represent them and I
cannot indicate . . . .

"The Court: Your client is right there. There's no reason he cannot get
that kind of accurate and complete record from them.

"Mr. Roth: Your Honor, I don't mean to fight with you.

"The Court: I think you do. *I'm beginning to question very much your
sincerity* . . . .

"The Court: You can take your chances on it because if I see fit to do
so and it's not produced, then I will find your client in contempt. . . . "
(Emphasis added.)

there had been already much delay and some hesitation in compliance.[4]

This third statement was in the form of a warning or admonishment, and appears to be made by the trial court with the awareness of its continuing obligation to see that no falsehood or other fraud was perpetrated on the court. General Statutes § 1-25. The trial judge at no time declared that he believed the defendant to be deceitful, nor did he display any conduct indicating that he could not preside in his role of impartial arbiter. The defendant's reliance on *Cameron* v. *Cameron,* supra, does not support his claim of error.

In *Cameron,* the trial judge, on several occasions before the defendant took the witness stand, stated his belief that either the defendant or his counsel was "attempting to perpetrate a fraud" upon the court, and that the defendant had "lied under oath" at his deposition. Id., 165, 166 n.2. The defendant was then invited by the judge to take the stand and, immediately after stating his name and address was held in contempt. To compound the gravity of this clear display of distrust of the defendant, the trial court ordered the defend-

---

[4] The transcript reads as follows:

"'The Court: . . . There shall be no effort on your part, Mr. LaBow, to try to go through the back door and discourage any of these people from making any statements whatsoever to Mrs. LaBow in connection with your interest in any of these entities that are mentioned in the order.

"Mr. LaBow: May I respond to that, your Honor.

"The Court: No, you may not respond to it. I'm just making that statement.

"Mr. LaBow: May I respond to it on re-direct when my attorney questions me?

"The Court: No. There's no need for any response to it. I'm just making that statement on the record so we all understand it very clearly. Now if we don't get a proper and adequate response then the Court may feel free at that point to draw inferences which would not be favorable to the defendant. I'm not making any determination of that point as of this time, but if it becomes a matter in issue and if I feel that inferences are warranted, I will draw those inferences. If they're not, then I won't draw them.''

ant to return to court the next day and referred to some prior experiences with "clients absconding" who had been represented by the defendant's counsel.

It is evident that in *Cameron,* our Supreme Court was confronted with an undeniable example of bias toward the defendant which mandated reversal. Id., 168–71. The court stated: "These expressions of a preconceived view of the credibility of a witness who had not yet testified before the trier and of an attitude of skepticism concerning any person represented by his counsel must have been devastating to the defendant and astounding to any observer schooled in the simple faith that the court is an instrument of justice." Id., 170.

Our review of the transcript in the present case does not show such bias. It is a fundamental principle that to demonstrate bias sufficient to support a claim of judicial disqualification, the "due administration of justice requires that such a demonstration be based on more than opinion or conclusion." *Szypula* v. *Szypula,* supra, 654–55. Such a showing has not been demonstrated by the defendant here. We conclude, therefore, that the court's remarks did not evidence a distrust of the defendant sufficient to support a claim of disqualification.

The defendant next argues that the trial court erred in denying his motion for recusal "[i]n light of the [trial court's] blatant appearance of impropriety." The defendant claims that the court exhibited an animosity toward him in reference to a certain discovery order. The trial court had previously ordered both the defendant and the plaintiff to supply authorizations for tax returns for prior years. It found that neither party had complied with its order. The court held the defendant in contempt and fined him $500. The trial court did not take any disciplinary action against the plaintiff for her noncompliance.

We agree with the defendant that disparate treatment for similar conduct may constitute prejudice. We fail to see a similarity in the noncompliance by the parties here, however. The defendant testified several times that he could not produce his 1983 tax return because he had not filed it and was unwilling to sign an authorization form to request the Internal Revenue Service to produce the 1983 tax return. The evidence showed that the defendant had actually filed a 1983 tax return.

On the other hand, the plaintiff had not filed any tax returns since the year 1978 because she did not work and had not received any alimony payments from the defendant. The plaintiff explained the situation to the trial court, stating that she thought that she did not need to sign any authorization forms. The evidence showed that the Internal Revenue Service had not received tax returns from the plaintiff since 1978. The trial court found that the plaintiff was being truthful about her situation and had, therefore, innocently "misunderstood" its order. The trial court refused to sanction the plaintiff although the defendant requested the court to do so.

The fact that the trial court found the defendant in contempt is not in itself sufficient to demonstrate a personal bias against the defendant nor favoritism toward the plaintiff. *Postemski* v. *Landon,* 9 Conn. App. 320, 323, 518 A.2d 674 (1986).

The defendant also argues that the trial court's "outrageous awards entered in its Memorandum of Decision" evidences the kind of prejudice which will support a claim of disqualification. We disagree with the defendant and conclude that our review of the record indicates that the judgment was based upon the evidence presented at trial. " '[T]he alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial

source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *United States* v. *Grinnell Corporation,* 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966) . . . . ' *Hayes* v. *National Football League,* [463 F. Sup. 1174, 1178–79 (C.D. Cal. 1979)] . . . ." *Szypula* v. *Szypula,* supra, 655. The defendant has made no claim that the judgment was awarded as a result of bias stemming from an extrajudicial source.

We hold that the trial court did not err in refusing to recuse itself.

## II

The next issue which this court must address is the defendant's claim that the court abused its discretion by increasing the plaintiff's periodic unallocated alimony and child support award from $4500 per month to periodic alimony of $4500 per week and child support of $200 per week. Certain facts found by the trial court are pertinent to this issue. While the plaintiff and the defendant were married, they and their three children enjoyed a luxurious lifestyle and lived "like millionaires" in their eight room apartment in New York City on Park Avenue and in a country home in Connecticut. The plaintiff had access to unlimited funds, expensive clothes and a chauffered limousine. All the children attended private schools.

Although the defendant is a successful investment analyst in securities and commodities, his income tax returns for the years 1974 to 1978 showed an average income of approximately $40,000. This figure is in sharp contrast to the $984,202 income reflected in his 1983 income tax return. In its memorandum of decision, the trial court stated that the defendant had failed to produce his 1984 income tax return and concluded that it was "therefore fair to infer that had it been produced,

it would not have been helpful to defendant's position in this hearing.'' The trial court also found that the defendant was unable to explain what happened to a bonus fee of approximately $1,000,000 earned during 1983 and 1984 for his investment services.

The defendant's 1985 financial affidavit listed the total of all his assets at $410,000, but he refused to specifically itemize what those assets were. The defendant did not itemize his bank accounts even though the plaintiff's evidence demonstrated that he had been writing checks over a number of years for substantial sums.

The trial court also found the defendant's testimony regarding his downward financial position to be ''truly disingenuous,'' and concluded that the defendant's financial situation had substantially changed for the better since 1978 and that the defendant has a far greater earning capacity than he did in 1978.

The trial court also emphasized the fact that the defendant abused his skill and expertise in financial matters to insulate his assets from his creditors, including the plaintiff, and sheltered the profits derived from his assets by manipulating those assets. The court specifically found that the defendant had intentionally and wilfully created sham trusts and employed a large variety of ever changing corporate entities and other devices to obscure his assets in order to shield them from the plaintiff and his other creditors.

The trial court concluded, upon the following facts, that the plaintiff's circumstances had also substantially changed since 1978. Until 1984, after her extensive litigation efforts in New York which resulted in six separate judgments, the plaintiff had not been able to collect the more than $300,000 in back alimony and support owed to her by the defendant. Also, the plaintiff is ''confronted with the need for very substantial sums to repair her living accommodations . . . from long

neglect not due to the plaintiff's fault." The court also noted the rising costs of living due to inflation.

The defendant claims that the trial court erred in finding a substantial change in the circumstances of both parties and erred in finding that the changes were uncontemplated by the parties at the time of the original divorce decree. We find no error.

General Statutes § 46b-86 (a) sets forth the statutory guidelines for deciding motions for modification of alimony and support awards. That section provides, in pertinent part, that "any final order for the periodic payment of permanent alimony or support . . . may at anytime thereafter be . . . altered or modified . . . upon a showing of a substantial change in the circumstances of either party." This statute has been interpreted to require a finding of a substantial change in circumstances that was not within the contemplation of the parties at the time of the original alimony decree.[5] *McGuinness* v. *McGuinness,* 185 Conn. 7, 10,

---

[5] General Statutes § 46b-86 (a), which provides for modification "upon a showing of a substantial change in the circumstances of either party," has been repealed and substituted by Public Acts 1987, No. 87-104. That public act provides in relevant part that "modification may be made upon a showing of such substantial change of circumstances, *whether or not such change of circumstances was contemplated at the time of dissolution.* By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court." (Emphasis added.) The act was not effective until October 1, 1987, and therefore does not affect this case. *Schofield* v. *Schofield,* 12 Conn. App. 521, 523 n.1, 532 A.2d 589 (1987).

We note further that this act is not retroactive in effect. Whether a statute will be given retrospective effect by the courts presents a question of legislative intent. *Hunter* v. *Hunter,* 177 Conn. 327, 331, 416 A.2d 1201 (1979). Where, as here, the legislature has made no specific provision, the matter becomes one of presumed intent. *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 195, 286 A.2d 308 (1971). Statutes which affect substantial changes in the law are not to be construed to have retrospective effect unless such an intent is clear. *Sherry H.* v. *Probate Court,* 177 Conn. 93, 100, 411 A.2d 931 (1979). We construe the new act to be a substantial change in

440 A.2d 804 (1981); see also *Schofield* v. *Schofield,* 12 Conn. App. 521, 532 A.2d 589 (1987).

A party seeking a modification of a prior periodic alimony award " 'must clearly and definitely establish an uncontemplated substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper.' " *Schofield* v. *Schofield,* supra, 523, quoting *Fabiano* v. *Fabiano,* 10 Conn. App. 466, 469, 523 A.2d 937 (1987); *Wingerd* v. *Wingerd,* 3 Conn. App. 261, 262, 487 A.2d 212 (1985). An extremely narrow standard of review is applied to the findings and conclusions of a trial court in domestic relations cases. A trial court's financial orders will not be disturbed unless the court has abused its discretion or its findings have no reasonable basis in the facts. *McGuinness* v. *McGuinness,* supra, 13; *Vanderlip* v. *Vanderlip,* 1 Conn. App. 158, 159–60, 468 A.2d 1253 (1984).

We initially address the defendant's claim that there was no substantial change in the circumstances of either party. The court's conclusion that there had been a substantial change in the circumstances of the parties was based on facts gleaned from evidence produced over twenty days of trial. These facts were stated in the court's lengthy memorandum of decision. The court specifically found the defendant to be a much wealthier person than he was in 1978, and unscrupulous in his attempt to hide his assets from the reach of his former spouse. In contrast, the court specifically found the

---

the law and to affect the substantive rights of the parties upon motions for modification of periodic alimony awards. Because the law affects substantive rights, the legislature is presumed to have intended that Public Acts 1987, No. 87-104, should not apply to pending matters in the appellate courts. *East Village Associates, Inc.* v. *Monroe,* 173 Conn. 328, 332, 377 A.2d 1092 (1977). Accordingly, Public Acts 1987, No. 87-104, is to be given prospective effect only.

plaintiff to have suffered great financial strain from rearing her children and taking care of herself without the alimony and support payments owed to her, from her extensive litigation efforts in New York which were necessary in order to force the defendant to perform his legal obligations, from her payment of over $95,000 in back taxes on the Connecticut home and New York apartment in order to avoid foreclosure, from the costs of the extensive repairs that the properties needed, and from the effects of inflation.

The defendant's next claim is that there was no substantial change in the circumstances of the defendant or the plaintiff which was uncontemplated at the time of the dissolution. Although the court did not enumerate the grounds for finding that the substantial changes were uncontemplated, the memorandum of decision sets forth numerous recitals of facts which are indicative of uncontemplated changes.

The most compelling evidence probative on the issue of uncontemplated substantial change is the evidence illustrating that the defendant purposefully masked his assets so that the plaintiff could not ascertain them at the time of the dissolution proceeding in 1978. In fact, the trial court stated several times that the defendant is still evasive about what assets he has, and still refuses to divulge a complete and truthful statement of his assets.

The court noted that in the 1978 proceeding, although the court had personal jurisdiction over the defendant and although the defendant and his counsel had filed an appearance with the court, neither the defendant nor his counsel were present at the hearings. The only evidence the original trial court had concerning the financial position of the defendant was the plaintiff's testimony that they lived a luxurious lifestyle, his income tax returns from 1971 to 1978, one of which

showed a loss of $73,000 and another an income of $40,000, and a deposition of the defendant regarding his finances.

The evidence at the modification proceedings showed that because of the defendant's skill and expertise in financial matters he had been able to insulate successfully his assets from the plaintiff. The court concluded that two trusts established by the defendant, the Valentine Trust and the Magic Mountain Trust, which were in existence since 1978, are in reality the defendant's "alter ego." The court stated: "The trust[s are] nothing more than a sham front for [the defendant's] own selfish use, designed to shield his assets from creditors, such as his ex-wife and others." Further evidence of undisclosed assets was the evidence that the defendant has, over the years, employed a large variety of names and devices to obscure his assets. He was the controlling party in numerous entities and used an "array of labels . . . [to] cover for substantial assets belonging to defendant." We hold, therefore, that where, as here, there is proof of substantial undisclosed assets, unknown to one party and the court, at the time of dissolution, such evidence is sufficient to compel a conclusion of an uncontemplated change in the circumstances of the other party within the meaning of General Statutes § 46b-86 (a).

A review of the transcripts of the 1978 dissolution proceedings makes it evident to this court that the trial court in those proceedings could not provide for all of the plaintiff's needs in rendering its financial orders because of its lack of knowledge of the amount of the defendant's assets. The original trial court stated that most of the defendant's assets were located in New York and concluded that they were outside the court's jurisdiction and could not be reached. It reluctantly concluded that it could not give the plaintiff any lump sum alimony and was limited in the amount of alimony and

support it could award: "[I]f I thought this Court had a grasp on his monetary funds I would honor [the plaintiff's] request, but I know legally we don't. . . . I would say [the plaintiff's] necessities certainly are great, but I certainly couldn't meet them."

The trial court on a motion for modification can reevaluate any unmet and continuing needs of the plaintiff which existed at the time of the original judgment, and it may reevaluate existing awards in terms of the plaintiff's present needs, using the same criteria as required for an initial award of periodic alimony and support. *Howat* v. *Howat,* 1 Conn. App. 400, 406, 472 A.2d 799 (1984). The trial court properly did so in this case.

In light of the startling dramatic increase in income earned by the defendant after the date of dissolution; see *Pascal* v. *Pascal,* 2 Conn. App. 472, 481 A.2d 68 (1984); *Howat* v. *Howat,* supra; the plaintiff's unmet needs under the original decree, the defendant's increased earning capacity; *Johnson* v. *Johnson,* 185 Conn. 573, 441 A.2d 789 (1981); the defendant's wilful withholding of alimony and support payments over a substantial period of time, and the presence of evidence of previously undisclosed assets, there is sufficient evidence to support a finding that the plaintiff demonstrated a substantial change in the circumstances of the defendant uncontemplated at the time of the original decree such that the continued operation of the original order would be unfair and improper. *Wingerd* v. *Wingerd,* supra. As a result, we conclude that the trial court did not abuse its wide discretion in its modification of the alimony award. The trial court's conclusion that the plaintiff's periodic alimony should be increased was reasonable in light of all the evidence presented. *Griffiths* v. *Griffiths,* 12 Conn. App. 807, 807–808, 531 A.2d 1203 (1987) (per curiam).

## III

As part of the financial orders rendered on the plaintiff's motion for modification, the trial court directed the defendant to reimburse the plaintiff for payment of back property taxes on the Connecticut properties in the aggregate amount of $95,655 plus interest. The defendant claims that this financial order is improper because it is retroactive in effect and is a lump sum alimony award. We disagree.

At the time of the dissolution, the plaintiff held title to a cooperative apartment on Park Avenue in New York, New York, and held a 50 percent interest in properties located in Weston and Fairfield. The other 50 percent interest in the Connecticut properties was held in the corpus of a trust created by the defendant in 1967 allegedly for the benefit of his children. Paragraph two of the dissolution judgment provides: "Defendant shall pay to the plaintiff the sum of $566.85 per week *for real estate maintenance,* rent, mortgage, *taxes,* insurance *and any charges* arising *from cooperative apartment maintenance* and the sum of.$220 per week for utilities and heating expenses, which sum shall be paid directly to the plaintiff by the defendant." (Emphasis added.) The trial court held that these orders refer to the Weston and Fairfield properties as well as to the New York cooperative apartment. The orders are incorporated in the original dissolution decree. On her motion for modification, the plaintiff testified that because the defendant failed to pay the monies owed periodically as he was ordered to pay, she could not pay the taxes on time. As a result, in addition to the regular tax due, a greater amount was owed due to the high interest and penalties incurred for nonpayment. The plaintiff paid $95,655 on December 28, 1984, to the towns of Weston and Fairfield in order to avoid tax foreclosures that had been instituted. The trial court

concluded that the defendant was directly responsible for the expense of $95,655 and, accordingly, ordered the defendant to reimburse the plaintiff for that amount with interest at the rate of 8 percent per annum from December 28, 1984, to the date of payment.

General Statutes § 46b-86 (a) provides that "any final order for the periodic payment of permanent alimony or support . . . may at anytime thereafter be continued, set aside, altered or modified . . . ." The defendant first argues that the ruling of the trial court that he must reimburse the plaintiff for property taxes already paid does not fall within the parameters of 46b-86 (a). It is his contention that the award was lump sum alimony and therefore nonmodifiable. *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 (1976). The defendant's second claim is that even if the financial order falls within the parameters of § 46b-86 (a), it is a retroactive modification and therefore improper. *Sanchione* v. *Sanchione,* 173 Conn. 397, 378 A.2d 522 (1977). We disagree.

The order directing the plaintiff to reimburse the plaintiff for payment of back property taxes on the Connecticut properties is more appropriately an order to pay arrearage. It is neither lump sum alimony nor a modification of periodic alimony. The sum ordered to be paid by the defendant to the plaintiff stemmed from the conclusion of the trial court that the financial orders incident to the dissolution judgment contemplated payment of taxes on the Connecticut real estate as well as the New York real estate, and that they had not been paid.

It is clear that a trial court, pursuant to a motion for modification, may prospectively increase a periodic order of alimony or support upon a finding of a substantial and uncontemplated change in circumstances, and, pursuant to a petition for contempt, may order

a payor spouse to make payment of an arrearage owing to the other spouse under the dissolution decree. General Statutes §§ 46b-86 and 46b-87. The question is whether a court can find and order an arrearage to be paid without a petition for contempt having been made, concurrently with findings and orders made pursuant to a motion for modification. We hold that it can.

The paramount role of a court when considering domestic relations cases is one of a "court of equity." The court's equity powers are essential to its ability to fashion the appropriate relief in domestic relations cases. "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . These powers, although not expressly given to the court by statute, have been held to be inherent powers of the trial court . . . ." *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585–86, 362 A.2d 835 (1975).

In this case, a review of the record and the transcripts shows that the plaintiff proffered sufficient evidence to prove that the defendant owed arrearage payments under a financial order incident to the original dissolution decree. Since there is no prohibition on granting a modification after a trial court has found the payor spouse to be in contempt; *Sanchione* v. *Sanchione,* supra, 403; it is difficult to understand why there should be a prohibition on finding and ordering the payment of an arrearage simultaneously with granting and ordering a modification of periodic alimony. A contempt petition for failure to pay alimony or amounts due pursuant to a financial order may be heard concurrently with a request for modification. General Statutes

§ 46b-8.[6] Underlying a finding of contempt is a finding of an arrearage due. We conclude that a motion for modification of periodic alimony may result in an order to pay an arrearage, if one is found, without the filing of a motion or petition for contempt.

Although the plaintiff raised her claim of an arrearage due during the hearings on her motion for modification rather than by the filing of a separate contempt petition, the court did not abuse its discretion in fashioning relief which would allow the plaintiff to be awarded the arrearage owed to her. Such relief is proper in light of the court's equitable powers. Trial courts have equitable authority to render such orders as may be required to protect the integrity of its judgments in dissolution matters. *Turgeon* v. *Turgeon,* 190 Conn. 269, 284, 460 A.2d 1260 (1983).

The trial court also ordered the defendant to pay interest at the rate of 8 percent per annum accruing from the date the expenditures were incurred by the plaintiff until the date of payment by the defendant. The parties have not cited any Connecticut case nor have we found one which addresses the precise issue of whether interest may be awarded after a finding that an arrearage is due on the financial awards ordered in a dissolution action.

The question of whether or not interest is a proper element of recovery ordinarily rests upon whether the detention of money is or is not wrongful. *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971). Nothing in the record indicates that the defend-

---

[6] General Statutes § 46b-8 provides: "MOTION FOR MODIFICATION OF SUPPORT ORDER COMBINED WITH MOTION FOR CONTEMPT. Whenever a motion for modification of an order for support and alimony is made to the superior court by a moving party against whom a motion for contempt for noncompliance with such order is pending, the court shall accept such motion and hear both motions concurrently."

ant was justified in withholding sums due each month under financial orders set forth in the dissolution judgment. In fact, the trial court found that retention of the sums owed to the plaintiff was wrongful. When a former spouse is not justified in failing to pay sums due under a separation agreement, the award of interest is proper. *Marcus* v. *Marcus,* 175 Conn. 138, 146, 394 A.2d 727 (1978). The only difference between this case and *Marcus,* is that in this case interest was awarded because of a judgment of a court rather than because of an agreement of the parties. The difference is not meaningful.

General Statutes § 37-3a provides that "interest . . . may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . . ." The amount of interest awarded is in compliance with the legal rate provided in General Statutes § 37-1 (a). Furthermore, a trial court also has discretion respecting the manner in which an arrearage shall be paid. *Moore* v. *Moore,* 187 Conn. 589, 447 A.2d 733 (1982).

Because there is no statutory prohibition against awarding interest on a judgment in domestic relations cases, and because the courts may fashion remedies that are appropriate and equitable, and because the court found that the retention of the sums owed was wrongful, the award of interest in this case was not an abuse of discretion.

## IV

The court also ordered the defendant to pay the costs of leasing, garaging, and operating "a small Mercedes Benz" automobile. The defendant argues that this award "is nothing more than a punitive award" and "constitutes a clear abuse of discretion." We disagree.

This financial order is not a lump sum award nor retrospective in nature. This award is for the periodic payment of prospective costs and, as such, is similar to an order directing payment of insurance premiums. The evidence presented to the trial court showed that during the marriage the plaintiff always had a Mercedes Benz and that she was in present need of a car. There was testimony that the plaintiff's need was unmet under the original award. The plaintiff also testified as to the approximate costs of leasing, garaging, and operating the car. Our review of the court's memorandum of decision indicates that instead of making an allowance for the expense in its modification of the periodic alimony award, the court made a separate financial order.

The defendant has pointed to no legal authority in support of his position that this award is improper, other than that it is "punitive." We held earlier in this opinion, concerning the issue of disqualification, that the trial court's judgment on the motion for modification was based upon the evidence presented over twenty days of hearing proceedings, and not upon any alleged bias against the defendant.

V

The final claim of the defendant is that the trial court abused its discretion by increasing to $10,000 per year the award for medical and dental expenses to be paid by him for the benefit of the plaintiff. Under the terms of the original judgment, the plaintiff was awarded up to $10,000 per year for medical and dental expenses for herself and the minor children.

In order to substantiate such an increase, the plaintiff should have shown (1) that her health had substantially deteriorated since the time of the original award, (2) that she was unable at the time of her motion for modification to meet her medical expenses, and (3) that

the defendant was amply able to pay the increase. *McGuinness* v. *McGuinness,* supra, 11. The plaintiff here has not met her burden of proof. The plaintiff presented no competent evidence as to a debilitating condition or a deteriorated state of health. In spite of repeated attempts by the trial court and counsel for the defendant to have these claims documented, the plaintiff failed to do so. Moreover, the plaintiff presented no medical bills to substantiate her claims. It was, therefore, an abuse of discretion for the trial court to increase the award for the plaintiff's medical and dental expenses.

There is error in part; that portion of the judgment pertaining to the award of $10,000 per year of medical expenses to be paid by the defendant for the benefit of the plaintiff is set aside.

In this opinion the other judges concurred.