## GENE DeMatteo *v.* Norma J. DeMatteo
## (7671)

Dupont, C. J., Spallone and Norcott, Js.

Argued March 7—decision released May 29, 1990

*Elizabeth A. Gallagher,* with whom were *Cynthia C. Bott* and, on the brief, *William F. Gallagher* and *Gary I. Cohen,* for the appellant-appellee (defendant).

*Daniel J. Mahaney,* for the appellee-appellant (plaintiff).

NORCOTT, J. The defendant appeals and the plaintiff cross appeals from the trial court's postjudgment dissolution order granting the plaintiff's motion to compel the defendant to endorse two Internal Revenue Service (IRS) checks for the tax years 1971 and 1972. The defendant claims that the trial court erred (1) in finding that its order compelling the defendant to endorse the two IRS checks fell within the scope of the parties' separation agreement and of the court's dissolution judgment, (2) in hearing the motion to compel without taking into account the plaintiff's response to the defendant's request for disclosure and production, (3) in denying the defendant's motion for recusal and motion for mistrial based on the trial court's misconduct, and (4) in failing to grant the defendant's request for an evidentiary hearing on her motion for recusal.

The plaintiff cross appeals from the trial court's denial of his oral request for interest on the money that was the subject of his motion to compel.

I

THE APPEAL

A

On July 2, 1981, the parties entered into a separation agreement, which the trial court adopted and incorporated in its judgment and order. Pursuant to the

agreement, the plaintiff was to indemnify and hold the defendant harmless "from any liabilities for taxes, assessment, penalties or interest which may result from any joint federal or state income tax returns . . . ." Further, the plaintiff agreed to assume sole responsibility to pay any amount, together with any interest and penalties, in the event of a deficiency assessment by the IRS. The agreement was silent as to tax refunds or overassessments and, accordingly, does not address the parties' respective property rights in such funds. The parties filed joint tax returns for the tax years that are the subject of this appeal.

Prior to signing the separation agreement, the parties owed a substantial tax deficiency to the IRS. The plaintiff's financial affidavit dated April 28, 1981, revealed contingent liabilities to the IRS of over one million dollars and noted that the plaintiff was under IRS examination. The plaintiff had satisfied this liability by virtue of a promissory note, payable to the IRS, executed by both parties and by additional tax deficiency payments that he made to the IRS during 1985 and 1986.

In August, 1987, the plaintiff received the first of the two disputed IRS checks, which are the subject of this appeal. One check was made payable to both parties, in the amount of $7688.53 for the 1972 tax year. The second check in the amount of $89,414.07 for the 1971 tax year was received in July, 1988, also made payable to both. The defendant refused to endorse the checks over to the plaintiff. After an unsuccessful attempt to have the IRS reissue the first check in his name only, the plaintiff moved the trial court to compel the defendant's endorsement of both checks to him. After an evidentiary hearing, the trial court granted the plaintiff's motion to compel.

As a part of its decision on this motion, the trial court found that the checks represented a "return of [IRS] overpayments for the tax years of 1971 and 1972" and that "none of the money was contributed by the defendant but solely by the plaintiff. . . . He paid [the tax deficiency] without prejudice and he is entitled to the returned funds." These findings were in response to the two principal issues that faced the court: (1) what the two IRS checks represented; and (2) what the intention of the parties was with respect to any money returned by the IRS. The first determination was clearly a factual one, which the court made upon hearing testimony and reviewing the evidence before it. Because the separation agreement did not specifically address the matter of any rebates from the IRS, the trial court, in interpreting the agreement, had to determine the intent of the parties. *First Hartford Realty Corporation* v. *Ellis,* 181 Conn. 25, 33, 434 A.2d 314 (1980); *Albert Mendel & Son, Inc.* v. *Krogh,* 4 Conn. App. 117, 123, 492 A.2d 536 (1985). The trial court's construction of an agreement is an issue of fact that we review, as with the other findings of fact, under the very limited "clearly erroneous" standard. *Albrecht* v. *Albrecht,* 19 Conn. App. 146, 152, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989); *Buchetto* v. *Haggquist,* 17 Conn. App. 544, 548, 554 A.2d 763, cert. denied, 211 Conn. 808, 559 A.2d 1141 (1989); *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985).

From our review of the record, we conclude that the trial court's findings were not clearly erroneous. As the court noted in its memorandum of decision on the plaintiff's motion to compel, the separation agreement clearly provides that the plaintiff alone satisfy any tax liabilities.[1] Indeed, tax deficiencies for the joint tax

---

[1] Paragraph 7.3 of the Separation Agreement provides: "The Husband agrees to indemnify and hold the Wife harmless from any liabilities for taxes,

years 1971 through 1980 were paid, subsequent to the divorce, in an amount over $1,800,000, and we find that the trial court did not err in concluding that the plaintiff alone satisfied those debts.

The record reveals that the tax situation of the parties was, at best, complicated, and that the plaintiff's financial affidavit filed prior to the July 2, 1981 judgment showed a detailed contingent tax liability, while the defendant's affidavit revealed none. This fact strongly suggests that, as of the date of the dissolution, while the parties as joint tax filers knew of the tax deficiency situation, the defendant wanted no part of the payments of the tax liability. This position is consistent with the clear language of the separation agreement. Further, aside from the fact that the IRS had determined that there was an overpayment for 1971, neither party referred to any joint "refund," in the classical sense, in their subsequent financial affidavits. This also is not surprising since the overall tax situation at the time of the divorce suggested only a very substantial tax liability that was to be, by agreement, the plaintiff's sole responsibility.

From this evidence, the trial court concluded (1) that it was the intent of the parties that the plaintiff be solely responsible for the tax deficiencies for 1971 and 1972, (2) that the plaintiff maintained that obligation by paying, subsequent to the divorce, over $1,800,000 to the IRS from his own funds, (3) that the two IRS checks constituted, not a refund, but a return of an overpayment of tax deficiencies, and (4) that, thus, the checks belonged to the plaintiff. We cannot conclude under the applicable standard of review that these findings were clearly erroneous.

assessments, penalties or interest which may result from any joint federal or state income tax returns signed or to be signed by the Husband and the Wife, and the Husband shall pay for the defense against any such claims." Paragraph 7.4 provides that the plaintiff-husband alone pay for any "deficiency assessments in connection with any of the aforesaid joint returns."

Nor do we find persuasive the defendant's argument that the evidence before the trial court was insufficient for it to conclude as it did. The essence of this argument is that because the court received no evidence as to whether the defendant contributed to the payment of the tax deficiencies for the tax years 1971 and 1972, it erred in concluding that she, in fact, had not done so. The response to the defendant's contention is that nowhere in her case-in-chief did she attempt to introduce any evidence suggesting that she had contributed to the payment of the tax deficiencies, even though the record reveals that she had a full opportunity to testify for herself or to call tax experts and other witnesses to testify on her behalf. Furthermore, it is unlikely that any such evidence or testimony would have persuaded the court in light of the separation agreement that specifically excused her and held her harmless from making tax deficiency payments for the tax years in question.

## B

As a corollary to her first claim of error, the defendant next argues that she was precluded from submitting any evidence of her contributions to the payment toward tax liabilities for 1971 and 1972 because the trial court denied her motion for compliance with her discovery requests pursuant to Practice Book § 218. The defendant claims that the court specifically erred in "refusing to hear and then denying" her motion for compliance *before* it ruled on the plaintiff's motion to compel. This argument is without merit.

We first note that, on November 21 and December 12, 1988, the trial court held a combined evidentiary hearing on the plaintiff's motion to compel endorsement and on the defendant's motion to compel compliance with her discovery requests. The defendant's motion was in response to the plaintiff's

production and disclosure of information. The plaintiff had turned over his entire file, but the defendant deemed this to be inadequate and requested that he comply by producing additional information.

On the first day of the combined evidentiary hearing, the court denied the defendant's request for further discovery. Thus, it is an inaccurate portrayal of the record to suggest that the trial court either failed to grant the defendant an evidentiary hearing on her motion or determined the result of the plaintiff's motion *before* resolving the defendant's motion for additional discovery.

Secondly, we do not find merit in the defendant's contention that she was unable to respond adequately to the plaintiff's motion to compel without the information sought under her motion for discovery. Pursuant to Practice Book § 218, "[d]iscovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure." " 'The granting or denial of a discovery request rests in the sound discretion of the court. *Kiessling* v. *Kiessling,* 134 Conn. 564, 568, 59 A.2d 532 (1948).' *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 57, 459 A.2d 503 (1983). That discretion, however, is limited, and it is an abuse of discretion to deny the disclosure of information which would be of assistance in the prosecution or defense of the actions. Practice Book § 218; *Standard Tallow Corporation* v. *Jowdy,* supra, 58–59." *Knights of Columbus Federal Credit Union* v. *Salisbury,* 3 Conn. App. 201, 210, 486 A.2d 649 (1985).

In the present case, the defendant contends that the trial court denied her the discovery of crucial materi-

als needed to counter the plaintiff's motion to compel. Our review of the record does not support her claim.

At the combined hearing on both parties' motions, the trial court had before it evidence (1) that the parties were joint taxpayers for the tax years subject to this appeal, (2) that the plaintiff's counsel provided to the defendant's counsel all of the documentation in his file, but that the defendant remained dissatisfied, and (3) that prior to the discovery request the defendant's counsel had provided the IRS with a power of attorney for the tax years 1971–80 on behalf of the defendant. From the evidence produced at the hearing, including the testimony of the plaintiff's tax expert, the trial court, as finder of fact, concluded that the defendant's request for discovery was without merit and accordingly denied it. We cannot say from our review that the court, in so doing, abused its discretion.

C

The defendant next claims that the trial court erred in denying her motion to recuse itself and in refusing to allow her an evidentiary hearing on this motion.

On November 21, 1988, prior to the court's receipt of evidence on the motions to compel, the defendant's counsel orally requested that the trial court, *Pickett, J.*, recuse itself from further matters regarding the case. In support of this motion, the defendant cited three incidents of improper ex parte judicial action: (1) an alleged prejudgment ex parte action by which the court, in chambers, entered an order restraining the defendant from the use of her own assets; (2) another alleged prejudgment ex parte action by which the court accepted a report in chambers, from "an alleged investigator," concerning the activities of the defendant; and (3) an alleged ex parte conversation between the court and another judge, *Kline, J.*, concerning a ruling that

the latter court made concerning postjudgment child support. The defendant then raised two additional grounds of inappropriate judicial conduct: (1) the trial court's comments about the professional conduct of the defendant's trial counsel allegedly made "in other proceedings in connection with this matter"; and (2) the "appearance of impropriety" that resulted from the fact that, in an unrelated matter that took place subsequent to the judgment in this case, the plaintiff's counsel represented Judge Pickett's nephew.[2] Judge Pickett denied any knowledge of the defendant's allegations concerning the case involving his nephew and the conversation with Judge Kline and denied the defendant's motion,[3] ruling that the prejudgment ex parte actions of which the defendant complained occurred "prior to judgment in this case and would have been merged."

Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). The "appearance as well as the actuality of impartiality on the part of the trier" will suffice to constitute proof of bias sufficient to warrant disqualification. Id., 170. The standard that we employ on appellate review is whether a reasonable person who is aware of the circumstances surrounding the judicial proceeding would question the judge's impartiality. *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 745–46, 444 A.2d 196 (1982); *Keppel* v. *BaRoss Builders, Inc.,* 7 Conn. App.

[2] The defendant speculates that the representation of Judge Pickett's nephew may have been done as a favor to Judge Pickett. The defendant admitted, however, that she had no evidence to support this assertion.

[3] Further, Judge Pickett correctly pointed out that even if this conversation had taken place, the defendant's proper course would have been to raise this claim in 1982 to Judge Kline, the judge whose ruling she wanted to challenge.

435, 440–41, 509 A.2d 51 (1986). Applying this standard, we find no error in the trial court's refusal to recuse itself in this case.

The defendant's allegations of judicial impropriety involve speculation, second-guessing and allusion to conduct, including conduct involving another court, *Kline, J.,* which she neither objected to nor appealed. Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse nor are they sufficient to warrant an evidentiary hearing on the same. *LaBow* v. *LaBow,* 13 Conn. App. 330, 340, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); *Szypula* v. *Szypula,* 2 Conn. App. 650, 656, 482 A.2d 85 (1984).

Furthermore, the first two ex parte actions of which the defendant complains occurred before the July, 1981 judgment. At no time during that proceeding did the defendant ever complain of the actions or seek disqualification of the judge. It was not until this issue relating to the disputed IRS checks arose in 1988 that the defendant chose to raise this claim of improper judicial conduct. Such action on the defendant's part can be construed as the functional equivalent of waiving the claim of error and consenting to having this judge preside over the case. *Logical Communications, Inc.* v. *Morgan Management Corporation,* 4 Conn. App. 669, 670, 496 A.2d 239 (1985); see also *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985). "A litigant must raise the question of disqualification in a timely and appropriate manner; *Pavel* v. *Pavel,* 4 Conn. App. 575, 576 n.2, 495 A.2d 1113 (1985); *Jazlowiecki* v. *Cyr,* 4 Conn. App. 76, 78, 492 A.2d 516 (1985); *Szypula* v. *Szypula,* [supra, 654]; or the claim will be deemed to have been waived. *Verissimo* v. *Verissimo,* 3 Conn. App. 222, 224, 486 A.2d 1134 (1985)." *Logical Communications, Inc.* v. *Morgan Management Corporation,* supra, 670.

In this case, we cannot say that, having waited seven years after the actions claimed to be improper had occurred, the defendant objected in a "timely and appropriate fashion." Accordingly, the trial court did not err in denying her motion to recuse.

## II

### THE CROSS APPEAL

On December 12, 1988, the trial court heard the continuation of the plaintiff's motion to compel. During the course of that hearing, the plaintiff made an oral request that the court award interest on the two checks representing the IRS overassessments. While it is clear that the plaintiff's original motion to compel did not include a request for interest, it is equally clear that the trial court regarded the plaintiff's oral request as an amendment to that motion and addressed the issue in its memorandum of decision on the motion to compel.

In its memorandum of decision, the trial court addressed the plaintiff's request as follows: "It is apparent that the unjustified refusal of the defendant to endorse the checks has deprived the plaintiff of the use of the money. Had the separation agreement provided for interest, the court would have awarded it from August 17, 1988, at the rate of 10 percent. There being no provision for interest, the court declines to award interest but rather leaves the plaintiff to such civil action as he may have on this claim." It is apparent from this decision that the court declined to award interest because it felt that it had no authority to do so. On cross appeal, the plaintiff claims that the trial court erred because no statutory authority prohibits the award of interest in a domestic relations case where the separation agreement is silent on the subject, and to deny interest constituted an abuse of discretion.

It is axiomatic that a trial court considering a domestic relations case acts as a court of equity that is empowered to fashion appropriate relief under its broad equi-

table powers. *Febbroriello* v. *Febbroriello,* 21 Conn. App. 200, 208, 572 A.2d 1032 (1990); *LaBow* v. *LaBow,* supra, 351; see also *Darak* v. *Darak,* 210 Conn. 462, 478, 556 A.2d 145 (1989). "There is no statutory prohibition against awarding interest on a judgment in domestic relations cases. *LaBow* v. *LaBow* [supra, 353]." *Kronholm* v. *Kronholm,* 16 Conn. App. 124, 133, 547 A.2d 61 (1988). The absence of reference to interest in a separation agreement also does not undermine the authority of the court to make an award of interest. See *Niles* v. *Niles,* 15 Conn. App. 718, 727, 546 A.2d 329 (1988); *LaBow* v. *LaBow,* supra.

The trial court here found that the "unjustified refusal of the defendant to endorse the checks" would have been the justification for the award of interest had the court believed it had the authority to do so. The question of whether interest is a proper element of recovery ordinarily rests upon whether the detention of money is wrongful. *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971). We find that, as a matter of law, the trial court erred in concluding that it had no authority by which it could award interest, and, having found that the plaintiff was unjustifiably denied the use of his money, it should have awarded interest accordingly. Cf. *LaBow* v. *LaBow,* supra (award of interest appropriate "[b]ecause there is no statutory prohibition against awarding interest on a judgment in domestic relations cases, and because the courts may fashion remedies that are appropriate and equitable, and because the court found that the retention of the sums owed was wrongful").

There is no error on the appeal, there is error on the cross appeal and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.