DECISION ON MOTION FOR REVIEW

GUERNSEY, Chief Judge.
Counsel for the Plaintiff in this matter and in the cases of DePasquale v. MTGA, Doeket No. GDTCT-Ü1-106 and Wallace v. MTGA Docket No. GDTC-03-12G-FAM, filed motions to disqualify Judge Frank A. Manfredi on grounds that such counsel and Judge Manfredi are presently engaged in a dispute over attorney’s fees in an unrelated case. After a hearing on November 20, 2003, Judge Manfredi denied all such motions. Pursuant to G.D.C.P. § 39(b) [1], the Plaintiff filed motions for review of Judge Manfredi’s decisions.
The factual basis of these motions relates to a personal injury matter, originally handled by Plaintiffs counsel, Masters & Puhlick, P.C., that was transferred to the law firm in which Judge Manfredi is a partner.[2] The two law firms have not agreed upon a division of the legal fees, and Judge Manfredi noted on the record that his firm had given a fee protection letter as set forth in the formal ethics opinions of the Connecticut Bar Association.[3] Judge Manfredi further noted, on the record and in his decision, that no attorney’s fees had yet been recovered. During the hearing on Plaintiffs Motion for Review, plaintiffs counsel clarified this situation by explaining that the face amount of one liability insurance policy had already been offered prior to the transfer of the file, but that the claim against that defendant could not be settled at that time without jeopardizing the claim against the defendant’s employer.[4]
A motion to disqualify a judicial authority pursuant to G.D.C.P. § 39(a) need not be accompanied by an affidavit, as required by Conn. Prac. Bk. § 1-23, unless the judicial authority so requires,[5] *284 which was not done in these cases. Similarly, the Gaming Disputes Court Rules of Civil Procedure do not specify the procedure for an automatic hearing when an attorney or party to a proceeding has filed a lawsuit or complaint against the judicial authority that is set forth in Conn. Prac. Bk. § l-22(b),[6] although the judges of this Court are certainly free to follow this procedure.[7] In the instant case, there seems to be no dispute as to the underlying facts. There has been no proof, nor has it even been suggested, that Judge Manfredi is biased or prejudiced against any party to the three actions involved in these motions.[8]
Disqualification of a judicial authority under these circumstances is governed by Canon 3(c)(1) of the Code of Judicial Conduct,[9] which provides:
A judge should disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonable be questioned, including but not limited to instances where:
(A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
It is axiomatic that a trial judge must conduct all trial proceedings with the “highest degree of impartiality” [citations omitted]; and that, as a minister of justice, a trial judge ought to be “cautious and circumspect in his language and conduct”. LaBow v. LaBow, 13 Conn.App. 330, 333-34, 537 A.2d 157, quoting Felix v. Hall-Brooke Sanitarium, supra, 140 Conn. 496, 502, 101 A.2d 500 (1953). In Cameron v. Cameron, the Connecticut Supreme Court emphasized that proof of actual bias is not required for disqualification:
Proof of actual bias in not required for disqualification [citations omitted]. The appearance as well as the actuality of impartiality on the part of the trier is an essential ingredient of a fair trial. The record in this case discloses a situation “which inevitably raises in the minds of litigants ... a suspicion as to the fairness of the court’s administration of justice.”
Cameron v. Cameron, 187 Conn. 163, 170-71, 444 A.2d 915 (1982). The test to be *285 applied is an objective, rather than subjective one:
The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge’s impartiality.
LaBow v. LaBow, 13 Conn.App. at 334, 537 A.2d 157.
In the instant cases, no credible claim of actual bias was been made in the motions to disqualify or the hearings held thereon. In her Motions for Review, however, counsel for the Plaintiffs alleges that the facts and circumstances of the fee dispute were discussed in the Gaming Disputes Court during the hearings on the motions to disqualify, and that concessions were requested of her that would prejudice her in future proceedings related to the issue of attorneys fees.
It is unclear just how Judge Manfredi could have conducted a hearing on Motions to Disqualify, which were predicated on a fee dispute, without discussing the fee dispute. The claim that, in conducting the hearings on the motions, Judge Manfredi attempted to obtain concessions for the purpose of gaining some advantage in future proceedings was never even addressed, much less demonstrated, during the hearing on Plaintiffs Motion for Review. A review of the transcripts of the hearings on the motions to disqualify shows that Judge Manfredi questioned whether there then existed a fee dispute, inasmuch as no fee had been “generated” as of that time.[10]
Nevertheless, it has been established that there exists, whether premature or not, a dispute over attorneys fees between the law firm of which Judge Manfredi is a partner and counsel for the Plaintiffs that, for the near future, is not likely to be resolved. The existence of a present controversy distinguishes this case from others involving the relationship between a judge and an attorney. See Bonelli v. Bonelli 214 Conn. 14, 18, 570 A.2d 189 (1990). While there is no question that Judge Manfredi would be impartial in fact, that is not the issue:
“The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] impartiality, on the basis of all of the circumstances.”
Ham v. Associates in Family Health, P.C. 2003 WL 21153497 (Conn.Super., May 2, 2003), quoting Papa v. New Haven Federation of Teachers, 186 Conn. 725, 744-46, 444 A.2d 196 (1982).
 The Gaming Disputes Court is charged with enforcing the substantive law of the Mohegan Tribe. MTO 95-4 Section 300. While the Tribal Council has gone to great lengths in the establishment of this Court to provide a forum for litigants that is familiar in many respects, both proee-durally and substantively, to those acquainted with Connecticut state court practice, this Court nevertheless recognizes that the impartiality of tribal courts in general is sometimes not assumed by the public at large. It is for this reason that the Gaming Disputes Court must at all times preserve the appearance of impartiality in all its proceedings.
*286 Therefore, Plaintiffs Motion for Review of the Memorandum of Decision on the Motion to Disqualify is granted in this case and the two other cases similarly situated, solely on grounds that the presence of an existing fee dispute between Plaintiffs counsel and a judge of this Court could lead an objective observer to question the court’s impartiality. Counsel for the Plaintiff, as an officer of the Gaming Disputes Court, is directed to notify the Clerk of the Court promptly upon the resolution of the fee dispute between Masters & Puhlick, P.C., and Cotter, Greenfield, Manfredi & Lenes. Until such time, pending further order of this Court, cases involving Masters & Puhlick, P.C. shall be assigned to other judges of this Court.

. G.D.C.P. § 39(b) provides “The decision of a judicial authority on a motion seeking the disqualification or recusal of such judicial authority shall be subject to review by the Chief Judge upon the filing by any party of a motion for review. Pursuant to MTO 95-4 Section 104, the Chief Judge ‘shall be the final decision maker on any question of recusal of a judge assigned to hear a particular matter.' "

. MTO 95-4 Section 103 specifically deals with the issue of the judges of the Gaming Disputes Court continuing the private practice of law: “Judges of the Gaming Disputes Court, in the exercise of their judicial functions as provided in the Connecticut Code of Judicial Conduct and the Connecticut Rules of Professional Conduct, shall not be subject to Canon 5(F) of the Connecticut Code of Judicial Conduct, prohibiting judges from practicing law.”

. Formal Opinion 31 of the Connecticut Bar Association.

. Alvarez v. New Haven Register, Inc,, 249 Conn. 709, 735 A.2d 306 (1999), held that a release of one defendant also serves to release those defendants vicariously liable, notwithstanding the provisions of Conn. Gen.Stat. § 52-572e. Neither firm appears anxious to test the Connecticut Supreme Court’s suggestion in Alvarez that the use of a covenant not to sue, instead of a release, might preserve rights of action against vicariously liable defendants.

. "... The judicial authority may require the filing of an affidavit or other proof of the facts *284 relied upon to show grounds for disqualification or recusal prior to any hearing on such motion.” G.D.C.P. § 93-(a).

.‘‘A judicial authority is not automatically disqualified from sitting on a proceeding merely because an attorney or party to the proceeding has filed a lawsuit against the judicial authority or filed a complaint against the judicial authority with the judicial review council. When the judicial authority has been made aware of the filing of such lawsuit or complaint, he or she shall so advise the attorneys and parties to the proceeding and either disqualify himself or herself from sitting on the proceeding, conduct a hearing on the disqualification issue before deciding whether to disqualify himself or herself or refer the disqualification issue to another judicial authority for a hearing and decision.” Conn. Prac. Bk. § I—22(b).

. G.D.C.P. § 1 provides "... Any procedure, issue or matter not covered by these rules or by tribal law shall be governed by the Connecticut Superior Court Civil Rules and the Connecticut General Statutes, as they may be amended form time to time.”

. This was stipulated to by counsel for the Plaintiffs in the hearing on the Motion for Review.

. “The Connecticut Code of Judicial Conduct as published in the Connecticut Practice Book, as may be amended from time to time, is hereby adopted as and declared to be the Code of Judicial Conduct for the Gaming Disputes Court to the extent applicable, except Canon 5(F), prohibiting judges from practicing law shall not apply to judges of the Gaming Disputes Court.” MTO 95-4 Section 1002.

. At the hearing on the Motions for Review, there was no dispute that settlement funds had not been received, and counsel for the Plaintiff explained the reasons why the underlying case against the defendant employee had not been settled as of the time the file was transferred. No justification whatsoever has been found for plaintiff counsel's claim that a discussion as to whether or not the dispute was premature was in reality an attempt to use judicial office for private gain.