ROWAN CONSTRUCTION CORPORATION *v.*
ZEF HASSANE
(6487)

DUPONT, C. J., BIELUCH and O'CONNELL, Js.

*(One judge dissenting)*

Submitted on briefs September 7—decision released October 21, 1988

*Mark F. Katz* filed a brief for the appellant (plaintiff).

*Lawrence D. Church* filed a brief for the appellee (defendant).

BIELUCH, J. This is an appeal by the plaintiff from the judgment rendered for the defendant on the plaintiff's amended complaint and on the defendant's revised counterclaim. The plaintiff claims that the trial court erred (1) in denying its motion for a mistrial, (2) in accepting the report of the attorney trial referee, and (3) in assessing the amount of damages sustained by the defendant. We find error.

On or about July 10, 1981, the parties entered into a written contract under which the plaintiff agreed to purchase property of the defendant on or before April 1, 1982, for the price of $370,000. A deposit of $25,000 was given to the defendant's counsel to be held in escrow in an interest bearing account for the benefit of the plaintiff until the scheduled closing. The transfer was contingent on the plaintiff's obtaining zoning approval for the construction of a minimum of twelve dwelling units on the premises. The plaintiff unsuccessfully applied for zoning approval of fifteen units. When the defendant refused to return the deposit, the plaintiff commenced this action. The defendant counterclaimed for unspecified damages. After the pleadings were closed and the case was claimed for trial, the court, without obtaining the consent of the parties, assigned the action to an attorney trial referee for hearing. The trial was completed on October 25, 1985.

The trial referee filed his first report on January 8, 1986. He found that the plaintiff had breached its contract by seeking zoning approval for a development in excess of the number of dwelling units specified in the contract and refusing to reduce its size to meet that contract condition. As to the defendant's counterclaim, although the referee expressly rejected the defendant's evidence regarding the difference in value of the real estate between its contract price and fair market value, he found that the defendant was damaged otherwise in the amount of $55,682.93. This damage consisted of payments by the defendant, between the contract closing date of April 1, 1982, and the subsequent transfer to another party on October 1, 1984, for interest on two mortgages and property taxes.

Both parties moved to correct these findings pursuant to Practice Book § 441.[1] At the same time, the

---

[1] "[Practice Book] Sec. 441. TIME TO FILE OBJECTIONS.

"Objections to the acceptance of a report shall be filed within two weeks after the filing of the report or finding, or if a motion to correct the report

plaintiff filed a motion for mistrial on the ground that the "state trial referee represented a party in an adversarial position to that of the plaintiff on an occasion prior to the commencement of trial . . . . Specifically, the trial referee represented a party . . . on a purchase of real estate from the plaintiff on or about 1976." After a hearing, the motion for mistrial was denied by the court. A hearing was held by the referee on the two motions to correct the referee's findings on April 8, 1987, at which time the parties "stipulated and agreed that the fair market value of the premises on April 1, 1982, was $305,000 and the contract price was $370,000." On the basis of this stipulation, the trial referee filed a corrected finding on May 21, 1987, amending his prior decision "to add to the damages suffered by the defendant on the counterclaim the amount of $65,000, being the difference between the contract price and the fair market value of the property." By this correction, the attorney trial referee increased his award of damages on the defendant's counterclaim to $120,682.93.

On May 28, 1987, the plaintiff filed an "objection to state trial referee reference" on the sole ground that the matter had been referred without its express consent. When the defendant moved for judgment in accordance with the corrected finding of the trial referee, the plaintiff, on June 15, 1987, objected to the acceptance of the report for this same reason, as well as for grounds specified in Practice Book § 440.[2] This objection to the report was overruled on August 6,

or finding has been made, within two weeks from the filing of the decision on the motion."

[2] "[Practice Book] Sec. 440. OBJECTIONS TO ACCEPTANCE OF REPORT.

"A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted.

"If an objection raises an issue of fact the determination of which may require the consideration of matters not appearing in the report or steno-

1987, when the court accepted the referee's report and rendered judgment for the defendant on the plaintiff's amended complaint and for the defendant to recover damages of $120,682.93 on his revised counterclaim.[3] The plaintiff has appealed to this court.

There is no merit to the plaintiff's claim that the trial court erred by denying its motion for a mistrial filed on the ground that the attorney referee should have disqualified himself from the proceedings because he had had a professional position adversarial to that of the plaintiff in a real estate transaction ten years earlier. For the first time in a reported decision, we review the standard of conduct applicable to attorney state trial referees in the exercise of their duties under the statewide program supplementing our limited judicial resources.

This program was officially inaugurated on February 1, 1984, by the Honorable John A. Speziale, formerly Chief Justice of the Supreme Court. Conn. L. J., Jan. 31, 1984, p. 12C. In the official announcement of this auxiliary judicial resource, the Chief Justice, under the powers of his office,[4] "designated the Chief Court Administrator to implement and administer this experimental project." On January 31, 1984, guidelines for attorney state trial referees were promulgated by the Chief Court Administrator. These provided, inter alia, that the following oath of office be taken by each referee upon appointment: "You do solemnly swear (or affirm, as the case may be) that you will support the Constitution of the United States, and the Constitu-

graphic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, plead to it by a motion to strike, answer or other proper pleading."

[3] Judgment was opened on October 5, 1987, on the plaintiff's motion for failure to receive proper notice thereof, and reinstated at that time to allow a timely appeal by the plaintiff.

[4] General Statutes § 51-1b (a) provides: "The chief justice of the supreme court shall be the head of the judicial department and shall be responsible for its administration."

tion of the State of Connecticut, so long as you continue a citizen thereof; that you will faithfully discharge, according to law, the duties of the office of state trial referee to the best of your ability; *and that you will, in addition to complying with the provisions of the Code of Professional Responsibility, comply with the provisions of Canons 1, 2 and 3 of the Code of Judicial Conduct concerning the matters in which you serve as a state trial referee.* So help you God." (Emphasis added.) Canon 3 C of the Code of Judicial Conduct, as relevant here, provides: "C. Disqualification. (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party . . . ."

The plaintiff is correct in his assertion that this court should apply to an attorney state trial referee the same code of conduct that it uses to determine whether a judge should have been disqualified from hearing a matter. The standard applied to determine whether the trier should be disqualified goes beyond a finding of actual bias. "The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality." *LaBow* v. *LaBow,* 13 Conn. App. 330, 334, 537 A.2d 157 (1988). We find that the present circumstances do not raise such a question.

At the court hearing on the motion for mistrial, the referee testified that he had no recollection, after the lapse of ten years, of the real estate closing involving the plaintiff. Furthermore, he was unfamiliar with the plaintiff or its name at the time of the trial, except for the evidence presented to him. The plaintiff did not show any business or other relationship between the referee and the plaintiff that would give cause for the referee's disqualification. We agree with the trial court's finding that the real estate closing related by the plaintiff was, in any event, too remote to create,

or even to suggest, a real or apparent conflict of interest by the referee, or color of personal bias or prejudice against the plaintiff. The trial court did not err in denying the plaintiff's motion for mistrial.

The plaintiff also claims that the trial court erred in accepting the referee's original and corrected reports because the plaintiff never expressly consented to a trial before an attorney state trial referee. This claim is a correct expression of the law: a case may not be referred to an attorney state trial referee without the consent of the parties. *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 514–15, 508 A.2d 415 (1986). "The [parties, however,] are deemed to have given their implicit consent to the referral by failing to raise their objection in a timely fashion." *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 251, 524 A.2d 610 (1987). "The fact that the [plaintiff] did not *expressly* consent to the referral did not deprive the referee of authority to hear and decide the case." (Emphasis in original.) Id. In the case before us, the plaintiff failed to object to the referral of the case until the trial was completed and the report of the referee's findings and decision was filed in court. "The appropriate time to object in this case would have been at the time of the referral, or at least prior to the commencement of the hearing before the referee." Id. We find that the trial court did not err in accepting the referee's report.

The plaintiff's remaining claim of error attacks the referee's findings and the judgment thereon assessing the amount of damages sustained by the defendant on his revised counterclaim. The referee filed his original findings on January 8, 1986. Pursuant to Practice Book § 438,[5] both parties moved to correct the findings. The

---

[5] "[Practice Book] Sec. 438. MOTION TO CORRECT.

"If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts, or by stat-

referee granted the motions and filed additional findings on May 21, 1987. Each party then had the right to object to the acceptance of the referee's report within two weeks of its filing. Practice Book § 441.[6]

On May 28, 1987, the plaintiff filed an "objection to state trial referee reference" of the case without its consent, and requested that the matter be restored to the trial docket for hearing before a judge. The objection was not acted on until August 6, 1987, when it was implicitly overruled on the rendering of judgment in accordance with the referee's reports. The first question we must resolve is whether the plaintiff's "objection" of May 28, 1987, was an objection to the acceptance of the referee's report within the terms of Practice Book § 440. If it was, the objection was timely, having been made within two weeks of the filing of the referee's supplemental report. The second objection of the plaintiff, dated June 15, 1987, was clearly untimely because it was not filed within two weeks of the date of the referee's report, as mandated by Practice Book § 441. The plaintiff's second objection included substantive objections to the report, and reiterated the sole ground of its May 28, 1987 objection, namely, that the report should not be accepted because the plaintiff had not consented to the reference.

The basic purpose of objecting to the acceptance of a trial referee's report is to demonstrate that the conclusions of fact stated within it are not supported by

---

ing the claims of the parties made before the committee, or by setting forth rulings upon evidence or other rulings of the committee, he shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions desired by him. He shall accompany the motion with a brief statement of the grounds of each correction asked, with suitable references to the testimony. The file shall then be returned to the committee for consideration of the motion to correct. As soon as practicable the committee shall file with the court the motion to correct, together with his decision thereon."

[6] See footnote 1, supra.

the subordinate facts, or that the referee erred in rulings on evidence or in other rulings. Practice Book § 440; *Dorsen* v. *Kay*, 13 Conn. App. 645, 649, 538 A.2d 1080 (1988). Although there may be "other reasons why the report should not be accepted"; Practice Book § 440; we conclude that one of these reasons cannot be an untimely objection to the reference itself for lack of consent made after the trial is over. Our conclusion follows the holding of *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, released on April 29, 1986, thirteen months before the plaintiff's objection to the reference. After the filing of the referee's report, without objection to the reference prior to trial, it is too late to attack the reference solely on the ground of a lack of consent. *Bowman* v. *1477 Central Avenue Apartments, Inc.*, supra.

The second question that justice compels us to discuss is the correctness of the referee's assessment of damages. Although we find that the objection of May 28, 1987, cannot serve as a valid objection to the acceptance of the referee's report, we conclude, nevertheless, that the trial court erred substantially when it rendered judgment in the amount of $120,682.93. Practice Book §§ 443,[7] 4185.[8] The trial

---

[7] "[Practice Book] Sec. 443. FUNCTION OF THE COURT.

"The court shall render such judgment as the law requires upon the facts in the report as it may be corrected. If the court finds that the committee has materially erred in his rulings or that by reason of material corrections in his findings the basis of the report is subverted or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another committee for a new trial or revoke the reference and leave the case to be disposed of in court.

"The court may correct a report at any time before judgment upon the written stipulation of the parties or it may upon its own motion add a fact which is admitted or undisputed or strike out a fact improperly found."

[8] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

court's judgment for the defendant to recover $120,682.93 additionally allowed the defendant to retain the deposit of $25,000, making the total damages awarded, in effect, $145,682.93.

The measure of damages for breach of a contract is the actual loss sustained by reason of the breach, which is the monetary value of what the promisee would have made if the contract had been performed, less the proper deductions. 22 Am. Jur. 2d, Damages § 45. The award of damages in such a case is designed to place the injured party, so far as can be done by money, in the same position in which he would have been had there been no breach. *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 319, 514 A.2d 734 (1986); *Loda* v. *H.K. Sargeant & Associates, Inc.,* 188 Conn. 69, 81, 82, 448 A.2d 812 (1982). " 'The measure of damages for breach of contract of sale [of real estate] is the difference between the *contract price* and the value of the property at the time of the breach of the contract. These damages represent the loss of the bargain.' " (Emphasis in original.) (Citations omitted.) *Loda* v. *H.K. Sargeant & Associates, Inc.,* supra, 82.

It was within the referee's purview to find, as a fact, that the contract was breached. The determination of whether a deficiency for a breach of contract exists and the valuation of the components of that deficiency are also questions of fact for the trier. *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 309–10, 460 A.2d 488 (1983). Here, there is no dispute that the defendant suffered a loss or deficiency, nor is there a dispute that the defendant paid mortgage interest and property taxes in the amount of $55,682.93 from the date of the breach to the date of another sale, that the agreed contract price was $370,000, that the fair market value of the property on the date of the breach was $305,000, and that the property was later sold to another pur-

chaser for $375,000. The only dispute as to the amount of damages due the defendant relates to the method of their assessment.

The ultimate question is whether the defendant has been awarded damages that exceed the amount necessary to put him in the position in which he would have been had the plaintiff not breached the contract. The parties agree that the date of the breach was April 1, 1982, and that the fair market value of the property on that date was $305,000. If the measure of damages enunciated in *Loda* is used, the defendant is entitled to damages of $65,000.

The defendant cannot *also* receive the mortgage interest and tax payments he made after April 1, 1982, because the date as of which he is to be made whole is that date, the time of the breach. If the law were otherwise, the repudiating purchaser could be held liable for mortgage interest and tax payments indefinitely, depending upon when, if ever, the seller sold the property. At the same time, the seller would not be required to give the breaching purchaser a credit should he sell the real estate at a price greater than the contract price, or a credit for use of the property in the intervening years. The court, therefore, erred when it further assessed the damages due the defendant as of a time other than the date of the breach.

There is error, the judgment on the defendant's revised counterclaim is set aside and the case is remanded with direction to render judgment for the defendant on his counterclaim in the amount of $65,000, less a credit in favor of the plaintiff in the amount of the deposit held in the escrow account, with its accrued interest.

In this opinion, DUPONT, C. J., concurred.

O'CONNELL, J., dissenting. I disagree with the majority's reaching the issue of damages. Practice Book

§ 441 mandates that objections to the acceptance of a referee's report be filed within two weeks from the filing of the referee's decision on a party's motion to correct. In the present case, the objection was filed eleven days beyond this time limit.

Relying on Practice Book § 441, both the Supreme Court and this court have consistently held that failure to file a timely objection precludes appellate review of claims of error attacking the trial court's acceptance of a referee's report. "A litigant cannot wholly ignore established procedures for the protection of its rights, as this [plaintiff] has done, and hope to receive on appeal the same treatment accorded to those who follow the rules of practice." *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 518, 508 A.2d 415 (1986); *Dorsen* v. *Kay,* 13 Conn. App. 645, 650, 538 A.2d 1080 (1988); *Ross* v. *Renzulli,* 9 Conn. App. 87, 90, 516 A.2d 149 (1986); see also *Morning Star Holding Co.* v. *Kostopoulos,* 12 Conn. App. 593, 595, 533 A.2d 569 (1987); *LiVolsi* v. *Pylypchuk,* 12 Conn. App. 527, 528, 532 A.2d 593 (1987). I find no justification for departing from this established position. Accordingly, I dissent from the majority opinion that discusses damages. I would find no error.