[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Lester Baum (hereinafter "Baum") brought this action in a three count complaint against United Cable Television Corporation of Eastern Connecticut (hereinafter "Eastern") and United Cable Television Corporation (hereinafter "United"). The underlying basis of the action is that the plaintiff had entered into an agreement to purchase shares of stock from the defendant Eastern which for reasons set forth below were never completed.
At the time of trial the parties entered into a Joint Stipulation of Facts which forms in part, the basis for the court's decision.
Eastern is a Connecticut corporation duly registered with the Connecticut Secretary of State's Office and was formed for the purpose of obtaining a franchise for the provision of cable television service in central Connecticut. At the time of Eastern's incorporation, United was the sole stock holder in Eastern.
In December of 1981, United entered into a Stock Purchase and Shareholders' Agreement (hereinafter "Shareholders' Agreement) with 16 residents of Connecticut, one of whom was the plaintiff Lester Baum, to sell outstanding shares of Eastern. Per the Shareholders' Agreement an equity call was made in September of 1984, and 1,000 shares of stock were issued. In January of 1985 a second equity call was made and Eastern offered 117 shares of common stock to the shareholders.
Of the 117 shares issued in the January equity call, 90 of the 117 shares were purchased at a price of $1,500.00 per share, leaving 27 shares to be sold. Due to a tabulation error of Al Wiersema, vice president of Eastern, only 72 shares were recorded as sold, leaving what Eastern thought were 45 shares to be sold. In March of 1985, Eastern sent out a letter to all the local shareholders informing them that there were 45 shares available for sale. The plaintiff, responding to the letter, agreed to purchase the remaining 45 shares from Eastern at a total purchase price of $67,500.00. Eastern accepted the plaintiff's offer to purchase the shares in April of 1985. CT Page 6823
The plaintiff forwarded a check in the amount of $67,500.00, to Eastern as payment for the 45 shares. In May of 1987, Eastern issued the stock certificates to the local shareholders. At this time Eastern discovered its mistake and notified the plaintiff that there were only 27 shares remaining and not the 45 as previously thought. In May of 1987, Attorney Madie Gustafson Helman, acting as corporate counsel to United and Eastern sent a letter to the plaintiff explaining the mistake accompanied by check of $33,746.31, which represented the price paid for the 18 nonexistent shares plus 12% interest.
The plaintiff returned this check to Eastern and requested that the 18 shares be issued. In June of 1987, Eastern again wrote to the plaintiff explaining the problem and included a second check in the same amount. This check was also returned to Eastern and the 18 shares were never issued.
In May of 1988, United purchased all the shares of stock issued to local shareholders at a price of $10,000.00 per share. The 18 shares of stock which are the subject of this action were not part of the purchase by United.
The first count of the plaintiff's complaint is directed against Eastern and is for breach of contract. The plaintiff argues that there was an agreement to purchase 45 shares of stock and only 27 were issued to the plaintiff and therefore Eastern breached the contract. Eastern claims by way of a special defense that the contract should be rescinded or reformed based on either a mutual mistake of fact or a unilateral mistake of fact.
The second count of the plaintiff's complaint is directed against United and sounds in tortious interference of contract. The plaintiff claims that United interfered with the contract to purchase the 18 shares between the plaintiff and Eastern. United claims by way of special defense that the contract should be rescinded or reformed based on either a mutual mistake of fact or a unilateral mistake of fact. United further argues that they could not have tortiously interfered with the contract as they were an indirect party to that contract.
The third count is also directed against United in which the plaintiff claims that United, as a majority shareholder in Eastern, breached its fiduciary duty to the plaintiff, a minority shareholder, by exercising it control over Eastern and not allowing it to issue the 18 shares. United again argues that the contract should be rescinded or reformed based CT Page 6824 on either a mutual mistake of fact or a unilateral mistake of fact. United also argues that it did not breach its duties as a majority shareholder to the plaintiff as a minority shareholder.
I. COUNT ONE, BAUM v. EASTERN
In count one the plaintiff argues that Eastern breached its contract with him. The plaintiff argues that the contract was for 45 shares of stock in Eastern and that only 27 shares were issued. The plaintiff seeks either a court order that the 18 shares be issued to him or monetary damages. Eastern does not deny that only 27 shares were issued to the plaintiff, but argues that the contract should be rescinded or reformed based on either a mutual mistake of fact or a unilateral mistake of fact. Since there is no question that only 27 shares were issued and not 45, the plaintiff is entitled to recover his damages unless Eastern is correct that the contract should be rescinded or reformed for a mutual or unilateral mistake.
"Reformation is appropriate in cases of mutual mistake — that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction." Harlach v. Metropolitan Property Liability Ins. Co., 221 Conn. 185, 190, ___ A.2d ___ (1992). Eastern has not shown that there was a mutual mistake. The miscalculation of the number of available shares for purchase was not made by the plaintiff but was the sole mistake of Eastern. The plaintiff intended to purchase the 45 shares offered by Eastern and this was the figure that was reduced to writing. Therefore, this court finds that there was no mutual mistake of fact in reducing the parties agreement to writing.
Eastern's claim in the alternative is that the contract should be rescinded or reformed because of its unilateral mistake. "Reformation is also available in equity when the instrument does not express the true intent of the parties owing to mistake of one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other." (Emphasis added.) Harlach, supra, 191. "The burden of proof on the issue of reformation is upon the party seeking it." (Citations omitted.) Lopinto v. Haines, 185 Conn. 527,535, 441 A.2d 151 (1981). In order to sustain its burden of proof Eastern must provide clear and convincing evidence that it is entitled to reformation. Lopinto, supra, 533-36.
Eastern has failed to establish that it is entitled to CT Page 6825 reformation because of a unilateral mistake of fact by clear and convincing evidence. It is clear that there was a unilateral mistake of fact, but to sustain a cause of action for unilateral mistake it must be coupled with fraud or inequitable conduct. Eastern pled fraud as a special defense but has failed to put forth evidence of fraud, either actual or constructive, by the plaintiff. Eastern claims that the plaintiff had knowledge that Eastern did not have 45 shares available for sale at the time of the original offering but went ahead and attempted to purchase them. The only evidence that Eastern offered to buttress this point is that the plaintiff was a director of Eastern and based on his position in the company he knew of the mistake and attempted to take advantage of it. The stipulation of facts submitted by the parties states that the mistake was not discovered until "early 1986" when Eastern was preparing for an audit. The offering of the 45 shares was made in March of 1985, a year before the mistake was discovered. The plaintiff did not have knowledge of the mistake at the time of the offering. The court finds that Eastern has failed to sustain it burden of proof for rescission or reformation based on unilateral mistake.
The plaintiff is seeking either the 18 shares or monetary damages.
 It is axiomatic that the sum of damages awarded as compensation in a breach of contract action `should place the injured party in the same position as he would have been in had the contract been performed.' The injured party, however, `is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain.' Guarding against excessive compensation, the law of contract damages limits the injured party `to damages based on his actual loss caused by the breach.'
(Citations omitted.) Argentinis v. Gould, 219 Conn. 151, 157-58,592 A.2d 378 (1991). The damages are measured at the time the breach occurred. Cf. Rowan Construction Corporation v. Hassane, 17 Conn. App. 71, 80, 549 A.2d 1085 (1988).
To place the plaintiff in the same position that he would have been had the contract been performed the court does not see fit to order the issuance of the 13 shares but instead chooses to award monetary damages. The plaintiff is seeking $180,000.00 (18 shares x $10,000.00 [the price at which the local shares were repurchased in 1988]) in damages. The CT Page 6826 plaintiff purchased the shares at $1,500.00 per share for a total cost of $27,000.00. The only evidence the plaintiff has as to his $180,000.00 value is that all the local shares were bought at $10,000.00 per share in 1988 and his statement that he would have sold them at that price. The plaintiff's valuation is purely self serving. This court finds that at the time of the breach, May of 1987, the damages to the plaintiff were in the amount of $27,000.00.
Therefore, judgement shall enter for the plaintiff on count one of the complaint in the amount of $27,000.00, plus interest from the date of the breach.
II. COUNT TWO, BAUM v. UNITED
In count two the plaintiff is seeking monetary damages, both compensatory and punitive, and attorney's fees from United on the ground that United tortiously interfered in the contract between Baum and Eastern to purchase the 45 shares. Specifically, the plaintiff claims that United exercised its control over Eastern, as majority shareholder, to prevent the issuance of the 18 shares in question. United's special defenses raise the question of reformation based on mistake, either mutual or unilateral, and fraud.
[The discussion of mistake found in the court's discussion of count one also applies to counts two and three.]
"`[The] court has long recognized a cause of action for tortious interference with contract rights or other business relations.' Nevertheless, `not every act that disturbs a contract or business expectancy is actionable.'" (Citations omitted.) Robert S. Weiss Associates. Inc. v. Wiederlight,208 Conn. 525, 535-36, 546 A.2d 216 (1988). "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." (Citations omitted.) Hart, Nininger Campbell Associates. Inc. v. Rogers, 16 Conn. App. 619, 629, 548 A.2d 758 (1985). The court has also stated that there can be no tortious interference of contract by someone who is directly or indirectly a party to the contract. Cf. Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446, 451, 477 A.2d 653
(1984).
The plaintiff has proven that there was a contractual relationship between himself and Eastern and that United knew of the relationship. However, the plaintiff has failed to prove that United intended in anyway to interfere with that CT Page 6827 relationship. Furthermore, United, as a majority shareholder in Eastern, is at least an indirect party to the contract and therefore no cause of action can be sustained against it for tortious interference of contract when the contract in question is between Eastern and the plaintiff.
For the above reasons, judgment shall enter for United in count two of the plaintiff's complaint.
III. COUNT THREE, BAUM v. UNITED
In count three, the plaintiff is seeking monetary damages, both compensatory and punitive, and attorney's fees from United on the ground that United breached its fiduciary duty as majority shareholder of Eastern to the plaintiff, a minority shareholder. United's special defense again raises the question of mutual and unilateral mistake.
"Authority exists in this state for officers, directors, and majority shareholders to be held personally liable for breach of fiduciary duty when evidence shows a misappropriation of corporate funds for personal benefit and subsequent fraudulent concealment. `If the controlling majority stockholder seeks to injure the minority stockholder through the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets, the claim resulting therefrom is sufficient to constitute an individual action.'" (Citations omitted.) Banks v. Vito, 19 Conn. App. 256, 262, 562 A.2d 71 (1989).
The plaintiff argues that United breached its fiduciary duty to the plaintiff, a minority shareholders, by not informing Eastern of the oversubscription. The plaintiff's argument must fail for two reasons. First, United did notify the plaintiff, through Howard Slater, of the oversubscription in February of 1986. Any claim that United breached its fiduciary duties by failing to inform the plaintiff either as a shareholder or in his capacity as a director of Eastern is therefore without merit.
Secondly, it was Eastern and not United that had a duty to correctly tabulate the number of shares that were left for purchase. It was Eastern's mistake and not United's. United did not have a duty as a majority shareholder of Eastern to insure the accuracy of the tabulations. Therefore, United did not breach its fiduciary duty to the plaintiff by failing to report the over subscription.
Therefore, judgment shall enter for United on count three of the plaintiff's complaint. CT Page 6828
CONCLUSION
In conclusion judgment shall enter for the plaintiff against Eastern on count one in the amount of $27,000.00 plus interest. Judgment shall enter for United on both counts two and three of the plaintiff's complaint.
BY THE COURT, HONORABLE PHILIP DUNN, J.