[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISQUALIFY (#156)
Is the nexus between a judge's decision in a case for conversion and the representation of the defendant by the firm of the judge's brother in a subsequent case brought by the defendant in the original case for vexatious litigation close enough to violate Rule 1.7 of the Rules of Professional Conduct, and Cannons 1, 2 and 3 of the Code of Judicial Conduct?
The court finds there is no potential for a conflict of interest and the judge's conduct did not create a perception of impropriety in reasonable minds, thus the motion for disqualification of the defendant's attorney is denied.
Judge Ryan granted an application to substitute a personal representative in the case of Perrine v. Ackerly in which the current plaintiff was a named defendant. This application was granted on September 19, 1988 as the court believed that General Statutes § 52-599 controlled (a cause of action may be continued if the executor enters at any time prior to the action commencing trial and may prosecute it in the same manner decedent would have done). An earlier application to substitute a personal representative was denied without prejudice on June 28, 1988 as the movant did not appear in court to argue the matter. Subsequently Judge Karazin ruled that the court lacked subject matter jurisdiction. A foreign executor lacks authority to sue as a plaintiff in a Connecticut court unless he has obtained ancillary letters from a Connecticut Probate Court (Hobart v.Connecticut Turnpike Co., 15 Conn. 145; Equitable Trust Co. v.Plume, 92 Conn. 649). The plaintiff had not been granted ancillary letters before the action commenced trial and was dismissed as a plaintiff.
The current case, Leeb-Lundberg v. McNamara and Kenney, was brought by one of the named defendants in the case ofPerrine v. Ackerly. Plaintiff Leeb-Lundberg has brought this action pursuant to General Statutes §§ 52-568(a)(1) and52-568(a)(2) on the theory of vexatious litigation against the plaintiff and the respective attorneys involved in the suit ofPerrine v. Ackerly. Richard Allyn Shaffer, Esq. submitted the CT Page 12067 applications to substitute the personal representative, on behalf of the plaintiff in Perrine v. Ackerly, and is a named defendant in the current case Leeb-Lundberg v. McNamara and Kenney.
Shaffer is represented in this case by Ryan, Ryan, Johnson, Clear Deluca, (Ryan Ryan).
The plaintiff argues that because Judge Ryan is the brother of two of the senior partners of the firm Ryan Ryan, their relationship and responsibility to Judge Ryan materially limits their representation of the defendant, Shaffer, in the current suit and that they should therefore be disqualified. The plaintiff argues that the client cannot consent to Ryan Ryan's representation because ". . . a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances [and] the lawyer cannot properly ask for such agreement or provide representation on the basis of the client's consent." The plaintiff further alleges that because Judge Ryan rendered a decision in the case that gave rise to this case for vexatious lawsuit, Ryan Ryan's representation of the defendant creates an appearance of impropriety in Judge Ryan's conduct and that has to be avoided according to Canons 1, 2 3 of the Code of Judicial Conduct.
Plaintiff has moved to disqualify Ryan Ryan from representing defendant Richard Shaffer on grounds of conflict of interest. Rules of Professional Conduct, Rule 1.7(b).
Rule 1.7(b) of the Rules of Prof. Conduct, proscribes a lawyer from representing a client if the lawyer has responsibilities to a third person, which responsibilities would materially limit the lawyer's representation of his client. Unless the lawyer reasonably believes that the representation will not be adversely affected the client may consent to the continued representation, after consultation to explain the implications of the common representation and the advantages and risks involved. According to the commentary, the critical question is how likely is it that a conflict will arise and if it does, whether the conflict will materially interfere with the lawyer's ability to judge what is in the best interest of his client. The client may consent to representation in spite of a conflict.
For example, a conflict of interest was found to exist where a party was represented as a beneficiary and an executrix of an estate by the same counsel. The counsel was disqualified from at CT Page 12068 least one of its representational capacities. Frank v. Estate ofFrank, 1992 WL 394682, (Conn.Super.). In another case, an attorney who was a member of the firm representing the defendant and who was also a member of the Board of the plaintiff organization was ruled to have a conflict of interest and the law firm was disqualified. The court noted that besides the existence of a conflict of interest, the plaintiffs had not given their informed consent for the law firm to represent the defendant. Convention of the Episcopal Diocese of Connecticut v.Minwax Company, Inc., Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 534705 (November 29, 1994, Hale, Trial Referee).
On the other hand, it was held that there was no conflict of interest in the situation where a plaintiff's lawyer had drafted an agreement that was the subject of the subsequent lawsuit. This was so, the court found, because neither the defendant or her predecessor in interest was represented by the plaintiffs' attorney at the time that the agreement was drafted. Furthermore, the plaintiff's lawyer reasonably believed that the representation would not adversely affect the client and the client further agreed to the representation after consultation.Taylor v. King, Superior Court, judicial district of Tolland, at Rockville, Docket No. 56029 (March 20, 1995, Rittenband, J.). InWestport Bank and Trust Company v. Corcoran, Mallin and Aresco,221 Conn. 490, 605 A.2d 862 (1992), no conflict of interest was found in spite of the fact that the attorney conducted a title search on behalf of a lender and a borrower, a situation in which there was potential for a conflict of interest. The court denied the motion to strike because a lawyer did not have to be disqualified just because the potential for a conflict of interest existed.
Thus, it appears from these cases, that conflicts of interest existed in situations where attorneys represented clients who were in roles where conflicts of interest inherently exist, such as being both a beneficiary and executor, or a member of the plaintiff body and a member of the firm representing the defendant. However, no conflicts of interest were found to exist where an attorney was involved with one of the parties before a subsequent law suit was instituted, where the attorney reasonably believed that his involvement would not adversely affect the client and the client agreed, or just because the potential for a conflict of interest existed. CT Page 12069
According to the Code of Judicial Conduct, a judge must avoid impropriety and the appearance of impropriety in all of his activities (Code of Judicial Conduct, Canon 2); a judge should not be influenced by, amongst other things, partisan interests (Code of Judicial Conduct, Canon 3 A.(1)); and a judge should disqualify oneself if the judge as a lawyer in the case, or with a lawyer involved in the case, (Code of judicial Conduct, Canon 3 C. (1)(b)). The commentary to the second cannon lists violation of law, court rules or other provisions of the Code of Judicial Conduct as actual impropriety. Furthermore, the comments state that a judge may not allow family or other relationships to influence their judicial conduct or judgement. However, according to the commentary to Canon 3, "The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge." In fact, only if it is reasonable to question the judge's impartiality, or if the firm with which the judge's relative is affiliated would be substantially affected by the outcome, would it be necessary for the judge to be disqualified. The commentary to Canon 2 enunciates a test for the appearance of impropriety. The test is "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." Code of Judicial Conduct, Cannon 2, Commentary to A.; Rowan Construction Corp. v.Hassane, 17 Conn. App. 71, 76, 549 A.2d 1085 (1988), quotingLaBow v. LaBow, 13 Conn. App. 330, 334, 537 A.2d 157 ("The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality.")
In Desalle v. Appelberg, Superior Court, judicial district of Fairfield, at Bridgeport, Docket No. 284262 (May 23, 1994, Vertefeuille, J.), the attorney trial referee (Code of Judicial Conduct applies), made two ex parte communications with the plaintiffs' former attorney and then ruled in favor of the plaintiffs. The reviewing court found that these actions created the appearance of impropriety but held that a mistrial was not warranted at that stage of the case. The court further held that an improper action of a judge did not automatically warrant a mistrial unless the unsuccessful party had been prejudiced by the judge's actions. Furthermore, the burden of proving such prejudice was on the party that raised it. In Rowan ConstructionCorp. v. Hassane, 17 Conn. App. 71, 549 A.2d 1085 (1988), a state trial referee (Code of Judicial Conduct applies) was also not CT Page 12070 disqualified for representing a party adversarial to the plaintiff approximately ten years before the current case. From these cases it thus becomes apparent that there is no appearance of impropriety where a judge's actions do not prejudice a party, or the judge's prior role in or connection to the proceedings are so remote that no prejudice to any of the parties will result.
According to the facts of the case Judge Ryan's actions, on which the plaintiff is basing its motion to disqualify Ryan 
Ryan, were taken long before that firm became involved in that case. The connection complained of by the plaintiff is very remote and it is thus unlikely that it will create a conflict of interest or interfere with Ryan Ryan's ability to represent the defendant. There is in any event no indication that Ryan Ryan reasonably believes that they are unable to competently represent Shaffer, or that Shaffer has not given his informed consent for Ryan Ryan to represent him. Nor is there any indication that Ryan Ryan was involved in any representation adversarial to any of the parties to this lawsuit or that any inherent conflicts of interest exist.
Since Judge Ryan is not involved with this case, his action in the prior case cannot create an impression of partiality towards any of the parties nor prejudice any of the present parties. Furthermore, Judge Ryan's actions in Perrine v. Ackerly
are in no manner related to the current case and cannot therefore create a perception of impropriety in reasonable minds. It is also unlikely that he will be involved in this action as Judge Ryan recuses himself from all actions in which Ryan Ryan are involved. Thus the likelihood that a conflict will arise is therefore very remote, besides which, this court need not address the issue of whether a conflict will materially limit Ryan 
Ryan's ability to represent its client as the question of whether Judge Ryan will be involved in this case is not before this court.
The motion to disqualify counsel is denied.
KARAZIN, J.